UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
SHAQULLE ABROM,

                       Plaintiff,

       - against -                            **COMPLAINT**

CITY OF NEW YORK, RUTH DONALD,
JONATHAN DIAS, and LEO BONACASA,

                       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        Plaintiff Shaqulle Abrom, by his attorney Michael Lumer, hereby alleges upon information and belief as follows:

        1.     At all times hereinafter mentioned, plaintiff was an adult resident of Kings County, in the City and State of New York, or was otherwise lawfully present therein.

        2.     At all relevant times hereinafter mentioned, defendant City of New York ("New York City") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

        3.     At all relevant times hereinafter mentioned, defendant Ruth Donald was employed by the City as a member of the New York City Police Department ("NYPD"), Tax No.: 962368. Donald is sued herein in her individual capacity.

        4.     At all relevant times hereinafter mentioned, defendant Jonathan Dias was employed by the City as a member of the New York City Police Department ("NYPD"), Tax No.: 955877. Dias is sued herein in his individual capacity.

5. At all relevant times hereinafter mentioned, defendant Leo Bonacasa was employed by the City as a member of the New York City Police Department ("NYPD"), Tax No.: 955762. Bonacasa is sued herein in his individual capacity.

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.

7. The action is properly venued in the Eastern District as the majority of the events complained of occurred in Kings County.

## RELEVANT FACTS

8. According to the defendants and prosecutors, during the evening hours of October 15, 2024, a teenager told police he was riding his moped in the vicinity of 4 Lewis Avenue in Brooklyn, New York when he heard gunshots. At that time or sometime soon thereafter, the teenager realized he had been shot in his right thigh. As the teenager is still under the age of 18, he is referred to herein by his initials "A.D."

9. A.D. was unable to describe or identify the shooter or shooters and there were no other eyewitnesses who could provide any such identification.

10. A subsequent investigation by members of the NYPD led to the discovery of shell casings and video footage from various cameras.

11. On October 16, 2024, the assigned detective, defendant Jonathan Dias, who worked in the 79 Precinct Detective Squad, conferred with defendant Bonacasa, who was assigned to the 79 Precinct Field Intelligence Unit to alert Bonacasa to the shooting and to request that Bonacasa attempt to gather information concerning this shooting during the course of his prisoner debriefings and from his confidential informants.

12. During the course of his investigation Dias was able to locate various video files from different cameras. He was also able to create still images of a man walking into or inside of a nearby building, but did not show the man committing a crime, holding a gun, or engaged in any criminal conduct.

13. Prior to November 10, 2024, Dias was unable to identify the shooter(s) notwithstanding the video and photographic evidence, or from the victim or any witnesses that evening, or from any of Bonacasa's confidential informants or prisoner debriefings. In short, as of November 9, 2024, the NYPD did not know who had committed this crime.

14. On November 10, 2024, Dias has stated he showed the still images of a man walking into a nearby building to Bonacasa.

15. Bonacasa told Dias that he recognized plaintiff as the man in the still images.

16. Bonacasa was unable to identify plaintiff in any of the outdoor videos, including one that the Kings County District Attorney's office ("KCDA") described as depicting a person firing a gun at another person who then ran away.

17. While the still images–the only source of plaintiff's identification–did not connect plaintiff to the shooting, Dias issued an I-Card for plaintiff's arrest on November 10, 2024.

18. During the evening hours of November 23, 2024, plaintiff was present in the vicinity of a bodega at or near 960 Myrtle Avenue when several police cars arrived. Various officers existed and immediately arrested the plaintiff.

19. Plaintiff was not engaged in any criminal conduct at the time of his arrest, nor was he in possession of any contraband of any sort. Rather, the plaintiff was told at the time of his seizure that there was a warrant for his arrest. He was then taken to the 79 Precinct station house where he was later told that he was arrested pursuant to Dias' I-Card.

20. While at the 79 station house the plaintiff was interrogated by defendant Ruth Donald.

21. Donald showed him various video and photographic images that she claimed showed plaintiff shooting at A.D. or otherwise implicated him in the crime.

22. The plaintiff denied that he committed the crime, denied that he was the person in the images, and denied that he was in the vicinity of the crime.

23. It was clear from the totality of evidence in the defendants' possession that not only was plaintiff not the person seen entering the building, but that even if he was that person, the defendants were well short of probable cause for plaintiff's arrest.

24. Upon information and belief nobody other than Bonacasa ever identified the plaintiff as the person entering or inside the building, and nobody, including Bonacasa, claimed to have witnessed the plaintiff committing or being present for the crime.

25. Notwithstanding the lack of any evidence that plaintiff had committed the crime against A.D., or any other crime, the defendants continued to process his arrest and eventually caused him to be transported to Central Booking.

26. The KCDA chose not to charge the plaintiff with any crimes or offenses of any sort. It was only then, at about 4:00pm on November 25, 2024, that plaintiff was finally released from custody.

27. Plaintiff is unaware of any further investigation into this crime or whether any other person has been sought for arrest or actually arrested for the crimes the plaintiff was originally arrested. What plaintiff does know is that he has not heard further from the defendants concerning this matter.

28. At no time did defendants have probable cause to arrest the plaintiff for the crimes committed against A.D. on October 15, 2024, nor was it reasonable for the defendants to believe that probable cause for the plaintiff's arrest existed.

29. To the extent that any of the individual defendants did not affirmatively participate in the decision to arrest the plaintiff hold him in custody as alleged herein, each such defendant was aware that the other individual defendants were or would be engaged in such unconstitutional conduct and thus understood that plaintiff's rights were being and would continue to be violated, and failed to take any steps to intervene in said unconstitutional conduct or otherwise protect plaintiff from harm, despite ample opportunity to do so.

30. , including the Doe defendants,The individual defendants were, at all relevant times herein, acting jointly and in concert.

31. That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

### FIRST CAUSE OF ACTION

(False Arrest and Imprisonment Pursuant to 42 USC §1983
Against the Individual Defendants)

32. Plaintiff repeats the preceding allegations as though stated fully herein.

33. The individual defendants willfully and intentionally seized, arrested, and caused plaintiff to be imprisoned without any lawful basis and lacked any reasonable basis to believe probable cause existed.

34. To the extent that any of the individual defendants did not affirmatively seize or place plaintiff under arrest, each such defendant was aware that plaintiff's constitutional rights were being and would continue to be violated, and failed to take any steps to intervene in said unconstitutional conduct or otherwise protect plaintiff from harm, despite ample opportunity to do so.

35. As a result of his unlawful arrest by the defendants, plaintiff was imprisoned and deprived of his liberty.

36. Plaintiff was conscious of the deprivation of his liberty and did not consent to any such deprivation.

37. The defendants are liable to plaintiff for false arrest and false imprisonment.

38. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused the plaintiff to suffer emotional injuries, mental anguish, loss of liberty, economic loss, and the loss of their constitutional rights.

[Remainder of Page Intentionally Blank]

## SECOND CAUSE OF ACTION

(New York City Administrative Code §8-802 et seq.
Against the City of New York and the Individual Defendants)

39. Plaintiff repeats the preceding allegations as though stated fully herein.

40. Each of the individual defendants is liable under New York City Administrative Code (§8-802 et seq.) for the false arrest and imprisonment of the plaintiff.

41. To the extent that any one of the individual defendants did not personally engage in any of the aforementioned conduct, they were aware that it was or would be happening, had ample opportunity to intervene to prevent it from occurring or continuing to occur, and failed to do so.

42. The City of New York, as the individual defendants' employer, is liable under §8-803 for the acts of its employees and agents, including these individual defendants.

43. By reason thereof, the municipal defendant and the individual defendants have violated §8-802 et seq., and caused each plaintiff to suffer emotional and physical injuries, mental anguish, incarceration, and the deprivation of their liberty.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, the plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

**WHEREFORE**, the plaintiff demands judgment against defendants jointly and severally as follows:

(i) actual and punitive damages against the individual defendants in an amount to be determined at trial;

(ii) actual damages in an amount to be determined at trial against the City of New York;

(iii) statutory attorney's fees pursuant to 42 U.S.C. §1988 and New York City Administrative Code §8-805, as well as the costs of the action;

(iv) injunctive relief in the form of an order issued by this Court expressly restraining each individual defendant from engaging in further conduct in violation of Administrative Code §8-802, as required under New York City Administrative Code §8-805(a)(3); and,

(v) such other relief as the Court deems just and proper.

Dated:   New York, New York
         July 29, 2025

LUMER LAW GROUP
Attorneys for Plaintiff

_____
Michael Lumer, Esq.
14 Wall Street, Suite 4C
New York, New York 10005
(212) 566-5060